Welcome to today's oral argument. Before we take up oral argument in the first case, I have two administrative notes. Number one, Judge Joe Flatt will be joining us or has joined us by telephone. He's recovering at home from a surgical procedure, but he will take part in the case today, the oral argument, if he chooses to do so, in the conference for sure. Second administrative note is that Judge Newsom is recused from the second case, so we'll take about a five or ten minute break between the two cases so that he can leave without being obvious about it, and then we'll come back in and take up the argument in the next case. Thank you. Mr. Brent. Good morning. If you may please report. In dismissing this case at the PDC, and doing so with prejudice in the first instance, the district court made several critical errors. First, the court failed to identify, much less apply, the governing Arlington Heights framework for applicable claims of intentional discrimination. Instead, it applied a heightened standard from an unrelated line of cases. This analysis conflicts with decades of Supreme Court precedent. Had the district court applied the proper standard, it would have been apparent the plaintiffs have alleged facts. Mr. Brown, could I ask you just at the outset to address the question of standing? It's obviously prefatory, and if we don't have the power to entertain the matter, then we could not go to the merits other than by providing a purely advisory opinion. Tell me specifically, as you see it, why, with respect to the defendant, the Attorney General, rather than the city, the injuries are traceable and redressable. Yes, Your Honor. So, the Attorney General caused plaintiff's injuries within the meaning of the standing doctrine, because had he acted otherwise, those injuries wouldn't have occurred. The Attorney General indicated a willingness to enforce the act. Here, the specter of potential enforcement contributed to plaintiff's harms by encouraging their employers not to raise wages in compliance with the city's ordinance, and it also pressured the city into not enforcing its ordinance. How is the Attorney General's enforcement power with respect to this statute any different from his so-called enforcement power with respect to any provision of the Alabama Code? Well, Your Honor, the Alabama Code, we cited the general statutory provision that gives the Attorney General the power to institute and prosecute in the name of the State civil actions necessary to protect the interests of the State. Which would apply, I assume, to any provision of Alabama law? I think it would apply to most provisions of Alabama law, Your Honor. I think it would not apply to provisions of law that expressly delegate enforcement authority to somebody else. So, the State has cited a number of cases in which enforcement authority is delegated to private parties. I think the Attorney General would not have enforcement authority where exclusive enforcement authority is delegated to a private party through a private right of action. Similarly, the Attorney General may not be an appropriate defendant in a case where enforcement authority is more specifically delegated to a different State official. That was the circumstance in the Women's Emergency Health Network case that we cited from this Court. But wherever the Attorney General has power to sue somebody to enforce a State law, I think he is an appropriate defendant under Ex parte Young, and it's fair to say that he has contributed to the harms for purposes of this case. Is there any difference between the authority of the Attorney General to sue to enforce the Minimum Wage Act in this case from the exercise of that authority to sue the City to enforce compliance with the Alabama Memorial Preservation Act? Is there any difference between this case and that case where the Attorney General has already exercised the authority to sue the City of Birmingham? I think that's a great analogy. In suing the City of Birmingham to enforce the law, the Attorney General relied on the exact same statutory provision that we point to here, Code Section 36-15-12. Well, there's a big difference, though. The Monuments Law is a law that is directed at local governments vis-à-vis the State, right? This State law, on the other hand, and the ordinance that your clients would like to enforce, the local ordinance, both regulate what private employers pay their employees. And the private employers have chosen not to pay the employees the wage that the local ordinance says should be paid, relying on the State law. And that has nothing to do with the Attorney General. Well, Your Honor, I think the law does a couple of things. I think, indirectly, it obviously does regulate, in some sense, the employment relationship and the minimum wage in this area by expressly regulating the conduct of municipalities in Alabama. I'll point you to, this is page 113 in the excerpts of record. What the law actually does is forbid any political subdivision in the State of Alabama from passing a law doing, among other things, raising the minimum wage above the federal floor. So it does, in fact, directly regulate the conduct Yeah, but that's a law that, it's one thing to say that what kind of monuments are on public property is going to be regulated as a matter of State law. It's another thing where the local government is trying to regulate private employers, the wages they pay their private employees. That's the situation we have here, right? I mean, yes, Your Honor, I'm not going to dispute the fact that the preemption law does seek to regulate wages, in particular the minimum wage in the City of Birmingham. But that doesn't mean that there isn't causation here for purposes of the standing analysis. The Supreme Court is clear that actions that indirectly cause harm are sufficient for standing. Incremental steps in the chain of causation are sufficient for standing. In fact, the Supreme Court has repeatedly held that causation exists where a challenged government action permits third-party conduct that causes harm, where that conduct would otherwise be unlawful. And that's exactly the situation we have here. So the fact that the Act is indirectly regulating... You get an injunction against the Attorney General and the private employers still refuse to pay the wage, relying on the State law. The workers would have to go to State court and obtain relief still against the employer, right? Well, Your Honor, I would remind the Court that there are actually two harms at issue here. We've alleged the harm of unequal treatment under the law that arose when the City of Birmingham was targeted and had its ability to remove the power... I'm sorry? ...had its ability to regulate this issue of importance to the citizens of Birmingham... Is that an injury to the City? I'm sorry? I thought... I mean, the City's not a plaintiff. It's an injury to the people of the City, Your Honor. It's an injury to the people who elected the officials who sought to regulate the minimum wage in this case. And that harm, the harm of unequal treatment under the law, would be remedied by the third party... Right, but I thought that, Counsel, I thought that the heart of the injury was that there were workers who are going to have to work at a Federal minimum wage, not at the $10 minimum wage set by local ordinance. That was the core of the injury, and it seems to me that's for purposes of injury. In fact, that's real. That's palpable. My question to you, though, is when we look at redressability, the third prong of standing, we ask whether there is a substantial likelihood that the relief requested will redress the injury claimed. If you accept the injury as being the fact that these workers are going to have to work not for $10, but for $7 an hour, how does an injunction barring the Attorney General from enforcing the Act bind or compel an employer to pay the minimum wage of $10.10 an hour? And if the answer is that it does not, don't you have a redressability problem? That is to say, whatever relief we could provide would not get you where you want to go, which is to $10 an hour. So, two things, Your Honor. First, I think that's on the initial premise of your question that we haven't sufficiently alleged a harm of unequal treatment under the law. I think that is the case. But with respect to your question about how… Well, maybe you have, but it seems to me the most compelling argument you have for injury is that workers are going to have to work for $7.25 rather than $10.10. That's what this is all about. Yes, Your Honor. So, with respect to that particular harm, I guess I would start where you started with your question, Your Honor, that for purposes of redressability, a plaintiff need only show that the relief requested will result in a significant increase in the likelihood that the harm will be redressed. Isn't the easy answer to the question that the injunction wouldn't come by itself? It would also come with a declaration that the State law is unconstitutional. And if the State law is unconstitutional, then the ordinance goes into effect. And if you think that employers are not going to follow the ordinance, then they're violating the law. And you'd have to assume that at the motion to dismiss stage. That's the argument, right? Yes, Your Honor, absolutely. Why isn't the counterargument to that that the Federal Court declaratory judgment doesn't bind the State courts, which is where the employees would have to file their lawsuit to get the damages under the ordinance? But, Your Honor, we don't need to show that the judgment will bind State courts. It will bind plaintiff's employers. That's why I keep coming back to this point. Well, do we need to go that far? I mean, our only job is to determine whether or not the Minimum Wage Act is unconstitutional. And as far as what happens in a State court, that's an issue for another day, right? I mean, we only have to do our job, right? Yes, Your Honor, absolutely. But, counsel, part of our job is to determine whether Article III gives us the authority to determine whether that Act is unconstitutional or not. And if you don't have any redressability for your claims, and whether you do or not, I understand you're arguing, but if you don't have any redressability, you don't have a basis for asking this Court to exercise Article III powers, do you? Your Honor, redressability exists in this case. That's not the question. Yes, Your Honor. You're out of court without redressability, are you not? Yes, Your Honor. Which is why we have to address it. Absolutely, Your Honor. It's why that's part of our job, is it not? It is, Your Honor, and that's why I want to explain to you why redressability exists in this case. Because the relief we've requested will make it substantially more likely that the harms we've alleged will be redressed. I think a declaratory judgment from a Federal District Court, even if it is not binding, would certainly be persuasive authority. Similarly, an injunction preventing the Attorney General from acting to enforce the preemption law would make it more likely in that, one, the plaintiff's employers, at least some of them, would likely comply with the City's Minimum Wage Ordinance after the preemption law has been struck down by a Federal District Court. And reminder, we don't need to show that every employer in the City of Birmingham would do so. Partial redress is sufficient for standing cases. What does that even mean when you say an injunction preventing the Attorney General from enforcing the statute? The statute doesn't require official enforcement. I don't even really understand that. Your Honor, you're right. It doesn't require enforcement. What would the Attorney General, if we say you may not enforce the statute, what are we preventing him from doing? You're preventing him from suing the City of Birmingham if the City of Birmingham takes steps to implement its Minimum Wage Ordinance. So we've alleged, and it's clear on the face of the Ordinance, that the Ordinance requires the City to take administrative steps. If a Federal Court declares the Minimum Wage Act unconstitutional, what's the effect of the Birmingham Ordinance? It would then go into effect. It is still on the books. The preemption law has the effect of voiding the Minimum Wage Ordinance. Which means that employers within the City of Birmingham would be required to pay its employees the $10.10 minimum wage, right? Yes, Your Honor. But the employers who are not paying that wage are not parties to this action. They're not bound by that declaration at all. They're not, Your Honor, and that's why I keep coming back to the point that we need not show that the belief obtained here would bind those third parties or would bind Alabama State. But the effect of the Court's judgment has to be on the defendant and how that directly or indirectly redresses the injury. The defendant here, the Attorney General, is not the one who pays them a wage. You're right, Your Honor, but again, indirect causes are sufficient. We need not show that the relief will, you know, sort of magically smelly fingers and everything we want will get. It is enough to show that the relief will increase the likelihood that the harm will be remedied because of its effect on the defendants. Counsel, it's getting a little bit repetitious. I wonder if you could get to the merits. Yes, Your Honor. Thank you very much. The merits, as the appeal said, the District Court failed to apply the governing Arlington Heights standard and instead applied a heightened standard from an unrelated line of cases. I want us to start there. So the District Court took this clearest proof standard, which as the Fifth Circuit has explained, has been grafted from a line of cases concerning ex post facto challenges and whether a legislature meant to impose a criminal penalty through an ostensibly civil law. The different context is important because in the ex post facto context, the clearest proof standard is applied not to simply assess legislative intent, but to determine whether a law is so inherently punitive as to quote negate the legislature's intent to deem it civil. The Supreme Court has characterized the clearest proof standard as assessing whether to quote override the legislative intent and transform what has been denominated a civil remedy into a criminal penalty. It makes sense to apply a higher standard in that context. It does not make sense to apply that standard here. And this Court cannot allow District Courts in this circuit to simply ignore the Supreme Court's instruction about how to assess claims of intentional discrimination. That's what the District Court did here. With respect to the Arlington Heights factors themselves, plaintiffs complaint alleges specific facts going to each and every one of those factors. We've alleged that the law unquestionably targeted a majority African American city, although facially neutral, it had immediate effect in only one city in Birmingham. It had a disparate racial impact within that city. It fits a pattern of Alabama's long history of removing authority from local black majorities as they gain and assert power. It was rushed through the legislature. It was enacted without regard to normal procedural requirements. There's evidence that the stated purpose was pretextual and it was subject to profoundly racially polarized votes within the legislature. That is more than enough to plausibly allege intentional discrimination in these circumstances. And to be clear, no particular element, no particular evidence is necessary. The Supreme Court is clear that discriminatory intent can be inferred from the totality of the relevant facts. And I see that I'm out of time now. If you want to take another two minutes to address the merits, we took up a good bit of your time. We'll give you two more minutes. I appreciate that, Your Honor. Thank you. And then, of course, give you your full reply time. Thank you very much, Your Honor. So I want to talk also about the district court's reasoning that plaintiff's claim of intentional discrimination is necessarily implausible because the state had an obvious alternative explanation for the law. This is directly contrary to the Supreme Court's instruction about how to analyze claims of intentional discrimination. It turns the Iqbal plausibility analysis on its head. Instead of asking whether plaintiff's claim is plausible in light of the facts alleged, it decides that the claim is necessarily and always implausible when the state merely advances an alternative explanation. At the plaintiff's stage, with no opportunity for adversarial testing of that alternative explanation. But legislative acts are always motivated by more than one purpose. And the Supreme Court is clear that only one purpose need be impermissible for a law to be unconstitutional. This reasoning, the defendant's reasoning, which mirrors that of the district court, would lead to an analysis akin to rational basis review. As long as the court can simply imagine a legitimate purpose for state action, claims of intentional discrimination would be dismissed at the pleading stage. And this simply is not the law. In the Iqbal case, the court did consider an alternative explanation for the fact that counterterrorism arrests following the September 11th attacks disproportionately affected Muslims. But it didn't stop there. Had that been enough, the court could have stopped its analysis at that point. Instead, it went on to assess the allegations and deemed them conclusory and otherwise insufficient to create a plausible inference of discriminatory animus. That was the meat of the court's holding in Iqbal, not the alternative explanation point that the district court relied on here. For this reason, the fact that other states have enacted minimum wage laws is not dispositive here. Even if some part of the motivation for the preemption law in this case were legitimate, that isn't enough, because if we have also plausibly alleged that there was an additional motive that was impermissible, that law would be unconstitutional. We've also alleged that the legislature cited no economic studies in support of its act, which calls into question the supposed alternative explanation. At the pleading stage, do you have an obligation to refute the obvious alternative explanations? Absolutely not, Your Honor. It's contrary to the plausibility analysis, and I believe this circuit has expressly held, or I'm sorry, the Eighth Circuit has expressly held that requiring a plaintiff to disprove at the pleading stage an unconceivable alternative explanation is inconsistent with that. If we're to agree with you, why wouldn't Birmingham be able to bring a lawsuit any time Alabama passed a law that was contrary to a Birmingham ordinance? Well, Your Honor, because of all of the unique features of the circumstances of this law and the circumstances of its passage that I ran through. So, for instance, a state law, again, targeted Birmingham. The timing of it makes that clear, as does the effect. This is a state law that had immediate effect in only one city, Birmingham. It had a disparate racial impact within that majority black city. It was rushed through the legislature. It was enacted without regard to normal procedural requirements. And I'm happy to go into more depth on any one of these factors, but I just want to explain the things about this law that were unique. It's not just that the legislature acted to preempt a particular Birmingham ordinance. It's all of this. It's the totality of the allegations that go to each and every one of the Arlington Heights factors that supports a plausible inference of intentional discrimination. Similarly, the evidence of the stated purpose was pretextual. And it was the fact that it was subject to profoundly racially polarized votes. Counsel, you've run over your time, and whenever I hear similarly, it reminds me of CF, and we're off the C in the direct citation. You'll have your full four minutes to reply. Thank you, Your Honor. Mr. Fuller. Thank you, Your Honor. I'm Eric Fuller. I'm from the city of Birmingham, Mayor William Bell. This suit was initially started, and they sued the city only for the purpose of providing plea relief. We believe that if the state's ordinance was determined unconstitutional, that the city would then start its own ordinance back again. In your panel brief, you asked that the court be reversed in the concluding paragraph, but in your brief before the en banc court, you take no position. Yes, Judge. What has happened is there's a new administration out of the nine city counselors. Six are new. Mayor Woodley is now the mayor for the last year and a half. My client has taken a neutral position in this litigation, and that's what I have to follow. Just so that we're clear then, the city of Birmingham is not seeking to enforce its local ordinance? Judge, like I said, we take a neutral stance on it. It depends upon the outcome. I think that the city would if the state's law were held invalid or unconstitutional. They would probably enforce it at that point. Thank you. At this point, the new administration has not taken steps to repeal the old ordinance, right? Correct. It's still on the city's books, Judge, but it's just, like I said in my brief, it's basically ignored. We're waiting for the outcome of this and where this lawsuit goes. Okay. Anything else, Counselor? Anything else? No, Judge. Other than the fact is that there's a statement that the principal is standing against the city of Birmingham that the city should not enforce the state law and it should enforce its own. The city's only argument to that, Judge, is that there's nothing affirmative in the state law that the city can't affirmatively enforce. It's a law of just preemption. It's null and void all ordinances across the entire state, all counties, all cities. So, like I said earlier, Judge, we take a neutral position. It's waiting for the outcome of this litigation. So, to be clear, the reason that Birmingham hasn't enforced the ordinance to date is because of the existence of this law and the Attorney General's position that it preempts your ordinance. Is that fair? Correct. We felt that as soon as the law was passed, we looked at it and we determined that it definitely wouldn't make our ordinance null and void. We just didn't. We have not enforced it to date. What modes of enforcement does Birmingham have? Let's say that there were an injunction here. What would Birmingham then do in order to enforce its ordinance? I think it would probably advertise first, Judge. It wouldn't put anything that the citizens know. But, like I said, the city's ordinance is employee versus employer. I think we'd have to put the general public on notice that our ordinance is now in effect. That the wage has increased. And, at that point, it's citizens that employees would have. Our employees would have to start paying if they don't. They have certain remedies. The employees would pay for it. So, I'm not sure I understand.  So, if the Minimum Wage Act is declared unconstitutional, then the ordinance remains in full force and effect, right? It would take effect at that point, Judge. Okay. Would you seek to enforce the ordinance, I think, is what everybody's really getting at. The reason I asked the question is it was very interesting. I listened closely to your answer when I asked the initial question. So, let's assume, arguendo, that the act was struck down by this court. And that this court were to enjoin the Attorney General. The employees still don't get their minimum wage at 10.10 until something happens. Either the employer pays or somebody goes to court to make them pay. What I guess I'm really asking is, and you may not be able to answer the question. It's really three or four steps down the road. But what would the position of the city be? Would you seek to enforce your ordinance? If an employee sued the employer saying the act compels, the local ordinance compels, would you join? Would you take a position? Or would your position be similarly agnostic as it is today? Judge, I haven't gone down that road with my client. But I believe, I indicated here, I believe that the city would start enforcing its ordinance. Okay. Well, we're still at the pleading stage, so we don't know what anybody would do, right? I guess my question would be, is there a likelihood, a declaration by a federal court, that the Minimum Wage Act is unconstitutional? Would it increase the likelihood, based on the viability of the Birmingham ordinance, that employers in Birmingham would pay their employees the minimum wage set forth in the Birmingham ordinance? That's the only question that we have here today. Would it significantly increase that likelihood? Judge, I can't say one way or the other. All right. Maybe Alabama can answer that question. Okay. Maybe the State can answer that question. Thank you. Well, I have one question. So, if the city were about to advise all the employers that it intends to enforce the ordinance, one thing the employers could do, though, is bring a pre-enforcement action for injunctive relief in the Jefferson County Circuit Court against the city, right? That's happened a number of times in Alabama law, right? Correct. Thank you. All right. Mr. LaCour. Chief Judge Carson, the police, the court, Edmund LaCour on behalf of the Attorney General and the State of Alabama. These claims are implausible, and they've been brought against the wrong parties, and for both these reasons, we think this claim, there's no case of controversy, and this case should be dismissed. I'd like to turn first to standing and specifically traceability. While you've heard plaintiffs allege in their complaint and their brief in here today about the harms caused by the act, there is precious little about the harms that have been caused by the Attorney General. Can I ask you a question about that? So, I guess I took sort of two theories from the briefing in the case. One seemed to be that the Attorney General had failed in some sort of ex ante obligation to advise the legislature that this is a bad law. And then second had, you know, that there was some ex post obligation of him to enforce the statute that sort of, you know, sort of puts him in the mix for causation traceability purposes. Which of those two things is really going on here, or both? Your Honor, well, to both of those. I think, one, there's no duty on the AG to advise the legislature or the governor about any law. If you look at 36-15-1, subsection 8, which was relied on by the plaintiffs and by the panel, that is a purely discretionary function. Moreover, it only kicks in if the court of last resort has invalidated the law. That, of course, has not happened. And when it comes to, I guess, it seems like there's a lot of weight on the press release. That press release was issued before the Act ever went into effect. More fundamentally, though, they don't allege anywhere in the complaint how this press release was effected. Their employers never read it. Their employers were influenced by it. We don't even know, based on the amended complaint, who Lewis or who Adams are employed by. So we think it's purely speculative that that press release had any impact, much less an ongoing impact, which they need for this injunctive release. Well, more troublingly to me, the characterization of the press release said, the characterization in the briefing said that it indicated to Birmingham employers that they would likely not have to comply and that this ordinance would be invalidated. I read the press release. I don't think it says that at all. The press release just says, don't worry, employers. You'll have reasonable time to comply. That's exactly right, Your Honor. And there's a provision in the Alabama Code that says that the ordinance cannot go into effect until it's published in the local newspaper. That didn't occur. The ordinance was signed on February 23rd, purported to go into effect on the 24th. It wasn't published until February 28th in the Birmingham News. So it didn't go into effect. The AG's advice was consistent with the Alabama law. And then at the very end, he mentions that the legislature is considering the Minimum I can't see how that's enforcement, much less enforcement that affected the plaintiffs, that caused the plaintiffs' harms here. Can I ask you a question? We don't know whether or not the issuance of the press release has had a coercive effect on employers in the city of Birmingham, though, do we? I mean, we say in our cases that as long as there is a coercive effect by a state official in a circumstance like this, redressability can be met. That's correct, Your Honor. But the cases also say that it is the plaintiff's burden when they are seeking, when they're asking this court to exercise its Article III jurisdiction to plead the facts that connect the dots. And they haven't done that here. There are important links in the causal chain that are missing. That is not the defendant's fault, Your Honor. That is the plaintiff's fault. They have relied on speculation upon speculation. And as the Supreme Court has said, when you're dealing with independent actions of third parties who are not before the court, that burden is ever higher on the plaintiffs. And they haven't even tried to satisfy that here. We don't have anything in the record of the pleadings in this case that would demonstrate that the Attorney General for the State of Alabama has given an opinion on the constitutionality of the Minimum Wage Act? Your Honor, he simply said in the press release that there was a law coming. I don't think that necessarily constitutes an opinion. And we filed briefs. We do think it's constitutional. I can address the merits later in the argument once we're finished talking about standing. But I don't think that's sufficient to conclude standing on the plaintiffs here. Otherwise, they could sue the AG any time they have a law that he feels is constitutional and that they have disagreements over it. That is not how Article III works. Let me ask you a question this way. If you're right that the plaintiff cannot establish traceability and cannot establish redressability, who could the plaintiffs sue, if anybody? Are they stuck with simply suing the employer? Is there any state official that the plaintiffs could actually sue claiming that the Act violated the Equal Protection Clause of the 14th Amendment? I don't believe there is, Your Honor. There wasn't in Doe v. Pryor when it came to the suit that the plaintiffs bring there. In Summit Medical, there wasn't a government agent that could be sued over the civil enforcement provisions of that particular law. And that is not any problem for this case either. They can sue their employer. I wouldn't say that that is only suing their employer. Indeed, they could get more complete relief from their employer if they were to prevail in that case. If they win here, it's really just a dress rehearsal for the later state court proceedings they're going to have to bring against their employer. And if they prevail in those, they get damages. They don't get damages from us because we don't set their wages. How is this case any different from the prototypical ex parte young scenario? Ex parte young, if I remember the case correctly, involved an ordinance dealing with amounts that could be charged by a railroad. So it involved a law's effect on private parties. In that case, the Supreme Court said that the State Attorney General was an appropriate defendant to be sued in his official capacity for prospective and declaratory relief. How is this any different? Because he was bringing enforcement actions directly against the railroads. There were criminal provisions and serious civil fines that the railroads would face, and that's why their shareholders were able to sue him because he had that direct enforcement ability. Whereas, if you look at women's emergency network and push, what this court has said is that connection is too attenuated if there are other parties who are actually assigned the task of enforcing it. So if, I don't want to put words in your mouth, but if an employer today in Birmingham or if the city of Birmingham said this ordinance is now valid, we're not following the state law, and the State Attorney General filed an enforcement action of one kind or another to prevent that from happening, he could be an appropriate ex parte young defendant? I don't think so, Your Honor. I think that enforcement is still too attenuated from the plaintiff's harms because No, but that's a different story. That's a different story. That's a standing issue. Your Honor, I'm talking attenuated directly out of women's emergency network. That is the word that they used to describe the enforcement authority that the Governor had. It was too attenuated because there were other people who were enforcing the law. And that's the case here. I mean, if you think for a moment what they were doing. So your point is that — and I'll stop with this question. So your point is that the Attorney General could never be sued in this scenario with regards to this law? That's correct. I don't know of a single ex parte case where a plaintiff has been able to sue a State official for bringing an action against a subpart of the State over how the State law governs the arrangement of power internally. I mean, that sounds very much like a suit against the State. Who gets sued? I lied. I have one more question. Under ex parte young then, who's an appropriate official to sue when a State law is allegedly unconstitutional? Who can you sue? To follow up on Judge Marcus' question. No, no. Forget the cases. I'm just asking you just an abstract question. Who do you sue when a State law is allegedly unconstitutional? You sue the person who's harming you. The person who's harming you here is your employer because you have a City right that you think should be vindicated. So you can't sue any State official? Not here, Your Honor, and that's not — Unless the State official is enforcing it, as they do many laws. As they do many laws. Place enforcement. But you just said you can't sue them if they're enforcing either. Not for this particular enforcement court because it is so attenuated from the harms that we're actually dealing with here. Again, there are other people — Is there any allegation that the plaintiff — that the Attorney General would sue employers? No, there's no authority to do so. Let me — can I follow up on that? So here's the scenario. A wage earner sues the employer for not paying the minimum wage that the Birmingham Ordinance requires. As I understand Alabama law, if the response of the — if the response of the employer is, you know, we've got this preemptive law that says Birmingham can't have this statute. And then the employee, the wage earner, comes back and says, but that's unconstitutional. Alabama law requires the Attorney General to be notified, right? Alabama Code 6, hyphen 6, hyphen 237, and allows the Attorney General to be heard. Well, Your Honor, to come back to the point that Judge Newsom was making this colloquy with my friend from the other side, I mean, that would allow the AG to be the appropriate party. No, no, but — I mean, but — In any suit, including purely civil disputes. I mean, I was an assistant Attorney General. I mean, that's the job of the Attorney General's office is to defend the statutes passed by the legislature. And Alabama law has a specific mechanism to allow you to intervene when a citizen of Alabama is saying one of the statutes passed by the legislature is unconstitutional. Your Honor, I think that would be akin to suing the Solicitor General of the United States. General, isn't that a law that allows the Attorney General of Alabama to be heard on the constitutionality of the act? And that's all? Exactly. It would be like trying to join the AG from filing an amicus brief or obtaining standing because he could file an amicus brief, which would allow you to obtain standing in every single case. One thing — What was the action taken by the Attorney General in the Summit medical case? Because the way I read it, we made it clear in that case that as long as there's a threat of future enforcement that may be remedied by equitable relief, that's enough to meet the requirements of Ex parte Young. Am I reading that wrong? Your Honor, I think you're reading a different part of the opinion. There were two parts. So there was an abortion law that was passed that had criminal provisions and had civil provisions. What the court held as to the civil provisions was that Ex parte Young's was not appropriate there because it was private parties reinforcing as to the criminal provisions they held that it could be. Now, we've also made an argument in our brief that the court should reconsider that particular holding because there has been no threat whatsoever of enforcement, not even against the city here. But why do you need to go there or here? This is a civil statute, right? I mean, why ask us to reconsider the criminal aspect of that case? Not the criminal aspect. I do think — I mean, I think if you — It seems to me if I were you, I would embrace this case wholeheartedly and say the civil piece of the case sort of helps me. We do embrace the civil piece wholeheartedly. We had sort of an alternative argument on Ex parte Young that if you think the connection is sufficient, which, as I explained to Judge Jordan, I think it's too attenuated, but if you don't buy that, we do think that there is an argument that because there has been threat enforcement against language that came right out of Ex parte Young, that the Ex parte Young exception should not apply here, that the AG should not lose his sovereign immunity simply because an act is on the books. It takes some sort of action, at least the threat of some action. But that is our sort of secondary argument on Ex parte Young. We think the Women's Emergency Network is more than enough. Help me with redressability. As I understand the meaning of redressability, it requires a showing that there is a substantial likelihood that the relief requested will address the injury claimed. Let's assume this Court and Bank were to strike down the Act as violating the Equal Protection Clause and enter an injunction barring the Attorney General from enforcing the Act. Under those circumstances, is it not substantially likely that any employer go forward and pay the minimum wage rather than testing it further? At least three answers there, Your Honor. First, I don't see how barring the AG from enforcing the law could redress the harm when the AG has never even tried to enforce the law. If you order him to simply keep doing what he's doing, I don't see how there's any change in action that would redress the harm. Going to this notion of striking down the law, and this Court obviously does not have the ability to go and actually pull it off of the statute books. That is a power reserved to legislatures. At most, what you can do is, through your judicial power, enjoin defendants. No one can sue a statute. And so I don't think that is enough. So you don't think we have the power to declare that a statute that was being enforced violated the Equal Protection Clause of the 14th Amendment? Not if there's not some sort of exercise of judicial power that you can use against a defendant to in some way remedy the plaintiff. Otherwise, Your Honor, they should have just left the Attorney General. That wouldn't say much about a declaration by a United States district court that a statute is unconstitutional. You know, the Attorney General and employers within the city of Birmingham would blatantly violate a federal court order declaring a statute unconstitutional? Your Honor, if well-reasoned opinions were enough to establish standing, then plaintiffs should have just sued each other and asked the district court to enter the declaration. That clearly would be an advisory opinion, and we think this opinion would be just as advisory. Counsel, a declaration in which the Attorney General was a party would not bind any state trial court judge in the state of Alabama, would it if it was an action by the employer or the employee against the employer? Absolutely, Your Honor. And this ordinance is not enforceable in federal court, is it? It's enforceable only in state court. That is absolutely correct. That's why I said, Your Honor, this feels like a dress rehearsal for the real dispute. And it wouldn't bind any employer in the city? Not one, Your Honor. And I'd also like to note, again, it is a plaintiff's burden to plead facts. There are no facts alleged. I don't think there are facts that could be alleged, but they haven't even tried to allege facts that would suggest that their employers, if they read a persuasive opinion from the district court, would go ahead and give up their state law defense. And that is their burden again when they're trying to establish standing  to plead those sorts of facts. They have failed. There's no standing here. We have no case for controversy with the plaintiffs. What's your response to your opponent's argument that the decision need not be binding? It need only increase the likelihood that the plaintiffs would gain relief? Your Honor, it has to be, yes, substantially increase the likelihood. It can't just be some metaphysical possibility. I think we're much closer to that metaphysical possibility here because, again, you have to speculate at a state court. You have to speculate not only that Birmingham is going to start enforcing its ordinance, which they said maybe they will do. I think you've seen the change of administrations. That is a speculative sort of thing. But second, you have to assume that they're going to win, that they're going to win in state court. And you can't simply assume that a state court is going to come out just like a federal court, no matter how strong the opinion is. So you think Alabama judges might view the Constitution a little differently from federal judges? They might, Your Honor. And I think they are perfectly capable, just as capable as federal judges in interpreting the federal Constitution. That's part of the framers. That's part of the setup we have from the framers. I'd actually like to — In every case that a State statute is challenged as unconstitutional in federal court, isn't there always a possibility that State court judges are going to see things differently? Yes, Your Honor, but that — Does that mean that there isn't a case in federal court? No. Federal judges, most of those cases, have a defendant who can be bound by the judgment in a way that's going to benefit the plaintiff. So you're not just relying on the strength of the opinion. You're relying on the exercise of judicial power against the defendant to change his actions vis-a-vis the plaintiff. That is the core of what we're saying for redressability. How do you measure redressability at the pleading stage? We've been talking about it as if it were a merits determination, but we're not even at summary judgment. How do you phrase the redressability prong of standing at the pleading stage? What's your formulation for that? To borrow from a couple of sources, I mean, when you're dealing, again, independent actions of third parties, it takes substantially more. You have to show that it's substantially likely that you're — No, no, no. I just want to try to get your formulation for — finish this sentence if you can. A plaintiff satisfies the redressability prong of standing at the pleading stage if he alleges what? He alleges that the court can enter some order against the defendant that is substantially likely to redress his crime. So you're putting in the — where's the plausibility part? It's all in Twombly in that formulation. Well, I think it also has to be plausible. Plausible or substantial? Substantially likely is the standard. I know. And how do you factor in plausibility into that standard is my question. It's plausible. How about it's plausible that it will substantially likely provide the relief? I mean, it — I like that formulation. Do you want to take — we gave your — Mr. Brown three minutes, two blossomed into three, to address the merits. You want to do that? Yes, Your Honor. I'll try to do so quickly. And actually, I have a question relating to that, if you don't mind. What facts — assuming that they're standing, what facts must a plaintiff allege to make it plausible that intentional discrimination was at least one but-for reason for legislation? Your Honor, I would point you to Arlington Heights. If you look at the examples that the court gave there, those are examples where it was obvious either on the face of the statute and its effects or based on the progression of events that led up to the passage of the Act that race had to have been involved. You've got Gomillion. You have Yickwo. You have instances where there was one parcel of land that was always zoned residential time after time. And then as soon as integrated housing was proposed, boom, they decide it's going to be commercial. There's no other way to describe that. Whereas here, everything that they — So it has to be — it has — you have to pretty much be sure that racial — that there was some kind of intentional discrimination motivation, in your view. That's what the allegations have to show. You don't have to be absolutely sure, Your Honor, but you need more than what we have here. Just consider for a second — So that's what I'm asking you. What allegations do you need at a minimum? Your Honor, I think even if you accept it, everything that they've said is true. And I didn't want to address paragraph 83 because I don't think it's true. But as a matter of public record, but — Okay. But, of course, we have to accept it is true for purposes of this motion to dismiss. I think you'll notice that it simply isn't true. And paragraph 83 is quite important. It's the only paragraph in the complaint that was actually quoted by the panel. But I'll bookmark that for a moment. So you accept everything they say is true. That is still perfectly consistent with the legislature that is acting without any racial motivation. Okay. But, again, my question is, what do you have to show? What would they have to show? I think if you showed anything like in any of the cases cited in Arlington Heights, then you would get there. But, again, you've just described Arlington Heights as there's nothing that it could have been other than an intentional discrimination motivation. So you've told — I think it's inconsistent with the presumption of goodwill. Okay. My question for you, is there anything in between what they have shown and allegations that, in your mind, demonstrate that it had to be an intentional discrimination motivation that would get them to plausibility? It would have to be something that at least removes the obvious alternative explanation that they are — Why does it have to remove the alternative explanation? Why can't it be — why can't there be two but-for causes? Well, it was more likely — there were more likely explanations in Iqbal, and that's why Iqbal was dismissed. This is a much harder case to prove, because in Iqbal, you're only dealing with one official. Here, you're dealing with an entire legislature. Again, what would they have to — what other things would they have to show? Is there something in between what they have alleged and what you have — Something that makes it more plausible than not that that is why they're acting, some sort of racial motive. And here, everything they alleged is partly — What would those things be? Because we all know that, you know, people don't say anymore, well, we're going to enact this so we can keep certain people in their place and these people in their place. People don't say that. So what would they have to show? I'd like to just sort of turn that question around. I don't know what more the legislature in 2016 could have done to avoid being dragged into federal court to have to prove their good — OK, so you don't want to answer the question? Is that — Would the plaintiffs have to show the clearest proof of discriminatory — Do you think that that burden is appropriate when you think it also lines up with the examples given in Arlington Heights? Fleming was a case that involved impugning legislative motive. This is a case that involves impugning legislative motive. It doesn't really matter if you're traveling under the Ex Post Facto Clause or the Equal Protection Clause. In either instance, you're engaged in what the Supreme Court in both cases — How many state legislatures have passed a law of this kind? About two dozen, Your Honor, about half, where the only one that's been challenged is trying to impose a lawsuit. And I think at the end of the day, it really boils down to the notion that — Well, first — Your Honor, I'm sorry I've gone way over. But Paragraph 83, if I could just address that briefly. If you look to the Texas brief, they make — So what Paragraph 83 says is the legislature didn't care at all about minimum wage laws until after Birmingham on April 21, 2015, passed a resolution asking the state to raise the minimum wage. It's a matter of public record that is just not true. April 14 of 2015 is when HB495 was introduced into the legislature, which would have preempted all ordinances — That makes that point, doesn't it, counsel? I believe your brief makes that point, does it not? Time's up. Mr. Brown's four minutes. Mr. Brown, can I ask you a question just as you get going? I hate to intrude on your rebuttal time, but we've been talking a lot about redressability, and I think this will help you kind of frame the discussion. There were two things about your prayer for relief in the complaint that struck me as odd. One, you asked for an injunction ordering the city to enforce its ordinance, and two, for an order directing the attorney general to pronounce, in effect, once the judgment of invalidity is entered by the court, that in fact the court has spoken. Those two things just strike me as odd because, one, I guess with respect to the latter, what does the attorney general's pronouncement add to the opinion of the court? And two, is it typical that you say to an entity, not only is your law valid and you may enforce it, you must enforce it? And just candidly, it felt to me like those were efforts to address standing issues that you knew were in the case from the beginning. We've got to get the AG in the case somehow, so we'll do it this way. We've got to get the city in the case somehow, so we'll do it this way. So help me about redressability with respect to the prayer for relief. Okay. So with respect to the city first, there are two things that the district court can do. One, it can require the city to take the administrative steps necessary to implement the ordinance. It has to appoint somebody to announce periodic cost of living increases and to publish those. And it can also order the district court. So you're saying the federal court could order a state entity to comply with a state or local law? I thought Pennhurst made it very clear under the 11th Amendment a federal court has no power to do that. The ordinance creates an obligation for the city. The ordinance may, but does a federal court have the power to order a state or local official to comply with state or local law? I thought Pennhurst settled long ago under the 11th Amendment there's no such power. I believe that's not correct, Your Honor. I believe that the district court could order the city to the extent that the city's noncompliance is violating the Constitution. I believe the district court could order the city to take the administrative steps that are required. But could a federal court order the city not to rescind the ordinance? Not to rescind an ordinance? Yeah. If you can order it to enforce it, couldn't you order the city don't rescind it? No, Your Honor. I don't think it could. Well, again, there's a difference between ordering a city not to rescind an ordinance that's on the books, to take sort of political action, and permitting a city to abdicate enforcement responsibility for a law... Why is one political and the other's not political? Because once you create a right and you assign enforcement authority to a particular body, and again, we're not talking here about ordering the city to institute enforcement proceedings against any... But the right to the minimum wage doesn't derive from any federal right. It derives from the local ordinance. You're talking about the authority of the city to enforce or not enforce its own laws, to exercise or not exercise its own discretion. That's the business of state or local law, not the federal court. Your Honor, I think individual enforcement decisions are discretionary, but we've cited a D.C. Circuit case that holds that the complete abdication of the responsibility to enforce a law that is on the books is subject to an injunction from a federal district court. Are the mayor and the attorney general, do they take an oath to uphold the Constitution of the United States? I believe they do, Your Honor. Help me just quickly, sorry, with the second piece of my question about the attorney general. Why is it that you want an injunction ordering the attorney general to announce the judgment of the court? Your Honor, because we think that the attorney general's prior statements had an effect on employers in Birmingham. Are we talking about the press release? I'm talking about both the press release and his statement to a spokesperson. Now, you heard my concern about the press release, right? You alleged, you said in your brief that the press release suggested that the employers would not have to comply. In fact, that's not at all what the press release says. The press release says you won't have to comply overnight. You'll have reasonable time to comply. Your Honor, the next paragraph, I believe it's the next paragraph of the admitted complaint, also talks about a statement that the attorney general made through a spokesperson, saying the legislature has authority to preempt local law, even those already in effect. So here we have the chief law enforcement officer of the state of Alabama saying that the legislature has the authority to preempt this law that your city is talking about enforcing. Which is entirely true. It is entirely true, Your Honor, and I think the reasonable inference that employers in Birmingham can draw is that the attorney general, the chief law enforcement officer of the state of Alabama, stands ready to enforce that law and enforce his interpretation. Why isn't it just as plausible the way you would take that is? The attorney general just made a simple declaration of what the law of Alabama is, which you agree that is the law of Alabama. And knowing full well that the employers and their attorneys can read the law themselves, we'll leave it to them to decide to comply with the state law and not worry about this local ordinance. Well, Your Honor, I think, again, this is a statement from a person who has the power, the acknowledged authority to bring a civil action to enforce this law. I think it's not the same as a statement from someone else. Yeah, but I mean, it'd be quite a burden on the attorney general's office, wouldn't it, to start suing to enforce a state law vis-à-vis every municipal ordinance in the state, right? Because this affects every municipality in the state, doesn't it? Your Honor, it only had an effect in one municipality at the time it was enacted. But the law on its face applies to every municipality, right? The law is facially neutral, Your Honor, and it only voided one minimum wage law. Thank you, counsel. Thank you. We are over your time. We'll take the case under submission, and we're going to take a five-minute recess before we take up the Arbor case. All rise.